CASE UNSEALED PER ORDER OF COURT



FILED

13 JUN 13  PN 4: 21

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

December 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>     v.<br><br>JAN HARALD PORTOCARRERO (1),<br>     aka Leo,<br>ERIK PORTOCARRERO (2),<br>     aka Bo,<br>     aka The Clam Eater,<br>AMIR MOKAYEF (3),<br>JOSEPH BARRIOS (4),<br>     aka JB,<br>YOUNG HEE KOH (5),<br>     aka Ace,<br>     aka Sonny,<br>RANDALL LEE IRWIN (6),<br>     aka Tyler,<br>LARRY NEIL GOLD (7),<br>     aka Cat,<br>CHARLES EDWARD SULLIVAN (8),<br>MICHAEL CHRISTOPHER IACO (9),<br>EMED G. SIDAROS (10),<br>     aka Action Ed,<br>ISAAC PETE GHARIBEH (11),<br>DUNZMY JUNE NGUYEN (12),<br>TODD MICHAEL HEFLIN (13),<br>HOWARD ALAN BLUM (14),<br>MICHAEL JOHN MASSEY (15),<br>SALVATORE GIACOMO GROPPO (16),<br>NILESH KUMAR AMBUBHAI PATEL (17),<br>     aka Neil,<br>BENJAMIN JOHN WILLIAM WEBER (18),<br>MACHO SPORTS INTERNATIONAL<br>     CORP. (19),<br><br>         Defendants. | Case No. 13 CR 2196 JLS<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 1962(c)<br>and (d) — Racketeering Conspiracy<br>to Conduct Enterprise Affairs<br>(RICO Conspiracy); Title 18,<br>U.S.C., Sec. 1955 — Illegal<br>Gambling Business; Title 18,<br>U.S.C., Secs. 981(a)(1)(C),<br>1955(d), and 1963, and Title 28,<br>U.S.C., Sec. 2461(c) — Criminal<br>Forfeiture |

AGS:nlv(2):San Diego
6/13/13

1  The grand jury charges:

2  ## Introductory Allegations

3  ## THE ENTERPRISE

4  1.   At all times material to this Indictment:

5  a.   Defendants JAN HARALD PORTOCARRERO, aka Leo, ERIK

6  PORTOCARRERO, aka Bo, aka The Clam Eater, AMIR MOKAYEF, JOSEPH

7  BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka Sonny, MACHO SPORTS

8  INTERNATIONAL CORP., and others constituted an "enterprise," as

9  defined by Title 18, United States Code, Section 1961(4) (hereinafter

10  collectively referred to as "MACHO SPORTS"), that is, a group of

11  individuals and a corporation and legal entity associated in fact.

12  b.   MACHO SPORTS was engaged in, and its activities

13  affected, interstate and foreign commerce.

14  c.   MACHO SPORTS constituted an ongoing organization, whose

15  members functioned as a continuing unit, for the common purpose of

16  achieving MACHO SPORTS' objectives.

17  ## OBJECTIVES OF THE ENTERPRISE

18  2.   MACHO SPORTS' objectives included the following:

19  a.   Enriching its leaders, members, and associates through

20  extortionate debt collection, an illegal gambling business,

21  transmission of wagering information, bookmaking, using telephones and

22  the Internet in aid of racketeering, and other crimes;

23  b.   Ensuring its customers' prompt payment of gambling

24  debts through the use of intimidation, threats, and violence, as well

25  as fostering a violent reputation as to its treatment of delinquent

26  customers;

27  //

28  //

2

1    c.   Avoiding detection of its illicit conduct by, among
2  other things, laundering its illegal proceeds;

3    d.   Evading law enforcement by, among other things,
4  maintaining MACHO SPORTS' headquarters and the physical platform for
5  its Internet operations outside the United States; and

6    e.   Enhancing its power and financial profits by promoting
7  MACHO SPORTS' activities with customers and potential customers.

8               **ORGANIZATIONAL STRUCTURE AND ROLES**

9    3.   At all times material to this Indictment, MACHO SPORTS had
10 the following organizational structure, with various members,
11 employees, and associates occupying the following roles:

12                       **The Company**

13    a.   MACHO SPORTS INTERNATIONAL CORP. (hereinafter referred
14 to as "MSIC") operated Internet sports gambling websites, including
15 www.machosports.com and www.betmacho.com, hosted on servers primarily
16 located outside the United States.   MSIC also operated toll-free
17 telephone services to facilitate sports betting.   MACHO SPORTS
18 operated within the United States by, among other things, offering,
19 conducting, and facilitating unlawful computer- and telephone service-
20 based sports gambling using MSIC's websites and toll-free telephone
21 numbers.   MSIC was registered in Panama on or about May 2, 2002, and
22 was granted power of attorney to operate in Peru on or about
23 November 13, 2008.   Since 2008, MSIC has been headquartered in Lima,
24 Peru.

25                        **Leaders**

26    b.   The founders and leaders of MACHO SPORTS are defendants
27 JAN HARALD PORTOCARRERO, aka Leo, and ERIK PORTOCARRERO, aka Bo, aka
28 The Clam Eater.   They controlled MACHO SPORTS' operations primarily

1  from MSIC's headquarters in Lima, Peru, where they employed numerous

2  telephone operators and several managers.

### Managers

4      c.   The managers at MSIC's headquarters, such as defendant

5  YOUNG HEE KOH, aka Ace, aka Sonny, oversaw the enterprise's telephone

6  and internet operations, resolved disputes, and adjusted customers'

7  lines of credit and online accounts.

### Bookies

9      d.   MACHO SPORTS had various bookmakers ("bookies"), such

10  as AMIR MOKAYEF (who operated primarily in the Southern District of

11  California) and JOSEPH BARRIOS, aka JB (who operated primarily in the

12  Central District of California).   The bookies were responsible for

13  recruiting customers, paying off winning bets, and collecting on

14  losing bets.  Bookies, such as MOKAYEF and BARRIOS, also often managed

15  their own network of bookmakers ("sub-bookies"), who recruited and

16  dealt with customers.

### Sub-Bookies

18      e.   Each sub-bookie was responsible for his or her own

19  "package," which refers to all the customer accounts managed by that

20  sub-bookie.  Sub-bookies recruited customers, paid off winning bets,

21  collected on losing bets, and delivered payments to the managing

22  bookie.

### Runners for MACHO SPORTS

24      f.   MACHO SPORTS used "runners" who dealt directly with

25  customers on behalf of its various bookies.  These runners, such as

26  RANDALL LEE IRWIN, aka Tyler, and LARRY NEIL GOLD, aka Cat, handled

27  customer payments and collections.

28  //

4

1

## Collectors for MACHO SPORTS

2      g.   MACHO   SPORTS   also   employed   "collectors,"   who

3 specialized in more aggressive measures to obtain payment on gambling

4 debts, including intimidation, threats, and violence.

5 ## METHODS AND MEANS OF THE RACKETEERING CONSPIRACY

6      4.   In  furtherance  of  the  racketeering  conspiracy  charged  in

7 Count 1, MACHO SPORTS utilized the following methods and means, among

8 others:

9      a.   To  further  the  objectives  of  evading  law  enforcement

10 and  enriching  its  members,  employees,  and  associates,  MACHO  SPORTS

11 operated MSIC's headquarters in Lima, Peru, and located the physical

12 platform for its Internet operations outside the United States.

13      b.   Bookies  and  sub-bookies  recruited  customers  in  the

14 Southern District of California and elsewhere.  Then they supplied the

15 customers  with  an  account  number  and  password  for  accessing  their

16 gambling accounts on MACHO SPORTS' websites.  Bookies and sub-bookies

17 instructed  their  customers  that  they  could  place  bets  with  their

18 bookmaker, or by calling MACHO SPORTS' toll-free numbers, or through

19 their online accounts on the MACHO SPORTS websites.

20      c.   MACHO   SPORTS   typically   extended   credit   to   new

21 customers,  so  they  could  begin  sports  betting  without  pre-funding

22 their  accounts.   MACHO  SPORTS  also  provided  further  extensions  of

23 credit  to  existing  customers,  so  that  those  customers  could  wager

24 larger amounts of money than their prior extensions of credit allowed.

25 //

26 //

27 //

28 //

1          d.    MACHO SPORTS used facilities in interstate and foreign

2   commerce, such as telephones and Internet websites, to facilitate its

3   illegal bookmaking and gambling activities.

4          e.    To further the objectives of ensuring prompt payment

5   as well as enriching MACHO SPORTS, the enterprise fostered a violent

6   reputation about its treatment of delinquent customers.  To this end,

7   and because MACHO SPORTS could not rely on the legal system for debt

8   collection, the enterprise used intimidation, threats, and violence

9   against its customers, especially when customers were late in paying

10  their gambling debts.

11         f.    MACHO SPORTS laundered many of its illegal proceeds by

12  inducing customers to pay their gambling losses to various entities

13  that appeared to be unrelated to MACHO SPORTS, such as check-cashing

14  businesses.  MACHO SPORTS members would later obtain the funds, or a

15  portion thereof, from these collaborating entities, and in this way

16  concealed the illicit nature of the funds.

17                               **Count 1**

18                      **(RACKETEERING CONSPIRACY)**

19       5.    Paragraphs 1 through 4 are realleged and incorporated by

20  reference herein.

21       6.    Beginning at least as early as 1995 and continuing up to and

22  including June 13, 2013, within the Southern District of California

23  and elsewhere, defendants JAN HARALD PORTOCARRERO, aka Leo, ERIK

24  PORTOCARRERO, aka Bo, aka The Clam Eater, AMIR MOKAYEF, JOSEPH

25  BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka Sonny, MACHO SPORTS

26  INTERNATIONAL CORP., and others, being persons employed by and

27  associated with MACHO SPORTS, an enterprise engaged in, and the

28  activities of which affected, interstate and foreign commerce,

knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of MACHO SPORTS' affairs through a pattern of racketeering activity, as set forth below, and through the collection of unlawful debt, as set forth below.

a.   The pattern of racketeering activity, as that phrase is defined by Title 18, United States Code, Sections 1961(1) and (5), consisted of multiple acts involving gambling, chargeable under Cal. Penal Code § 337a (bookmaking), which is punishable by imprisonment for more than one year, and multiple acts indictable under the following provisions of Title 18, United States Code:

i.   Title 18, United States Code, Section 894 (extortionate debt collection);

ii.   Title 18, United States Code, Section 1084 (transmission of wagering information);

iii. Title 18, United States Code, Section 1952 (Travel Act/phone and Internet use in aid of racketeering enterprises); and

iv.   Title 18, United States Code, Section 1955 (illegal gambling business).

It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of MACHO SPORTS' affairs.

b.   The unlawful debt, as that phrase is defined by Title 18, United States Code, Section 1961(6), consisted of debts incurred and contracted in gambling activity which was in violation of the law of the United States and the law of the State of California and which was incurred in connection with the business of gambling in

1  violation of the law of the United States and the law of the State of
2  California.   It was a part of the conspiracy that each defendant
3  agreed that a conspirator would commit at least one collection of
4  unlawful debt in the conduct of MACHO SPORTS' affairs.
5  All in violation of Title 18, United States Code, Section 1962(d).

**Count 2**

**(ILLEGAL GAMBLING BUSINESS)**

7.   Paragraphs 1 through 4 are realleged and incorporated by
reference herein.

8.   Beginning on a date unknown but at least as early as 1995,
and continuing up to and including June 13, 2013, within the Southern
District of California and elsewhere, defendants JAN HARALD
PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,
AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka
Sonny, RANDALL LEE IRWIN, aka Tyler, LARRY NEIL GOLD, aka Cat, CHARLES
EDWARD SULLIVAN, MICHAEL CHRISTOPHER IACO, EMED G. SIDAROS, aka Action
Ed, ISAAC PETE GHARIBEH, DUNZMY JUNE NGUYEN, TODD MICHAEL HEFLIN,
HOWARD ALAN BLUM, MICHAEL JOHN MASSEY, SALVATORE GIACOMO GROPPO,
NILESH KUMAR AMBUBHAI PATEL, aka Neil, BENJAMIN JOHN WILLIAM WEBER,
and MACHO SPORTS INTERNATIONAL CORP. knowingly and intentionally
conducted, financed, managed, supervised, directed, and owned all and
part of MACHO SPORTS, an illegal gambling business involving sports
bookmaking, which gambling business was a violation of the law of the
State of California in which it was conducted (that is, in violation
of California Penal Code, Section 337a), and which involved at least
five persons who conducted, financed, managed, supervised, directed,
and owned all and part of MACHO SPORTS, and which remained in
substantially continuous operation for a period in excess of thirty

8

1  days and had a gross revenue of at least $2,000 in any single day; in
2  violation of Title 18, United States Code, Section 1955.

3  ### Forfeiture Allegation 1

4  ### (RACKETEERING CONSPIRACY FORFEITURE)

5  9.   The allegations contained in Count 1 and paragraphs 1
6  through 4 are realleged and by their reference fully incorporated
7  herein for the purpose of alleging forfeiture to the United States of
8  America under Title 18, United States Code, Section 1963.

9  10.  As a result of the violation of Title 18, United States
10  Code, Section 1962, as alleged in Count 1, defendants JAN HARALD
11  PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,
12  AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka
13  Sonny, and MACHO SPORTS INTERNATIONAL CORP. have:

14  a.   acquired and maintained interests in violation of
15  Title 18, United States Code, Section 1962, which interests are
16  subject to forfeiture to the United States under Title 18,
17  United States Code, Section 1963(a)(1);

18  b.   an interest in, security of, claims against, and
19  property and contractual rights affording a source of influence over
20  MACHO SPORTS, which these defendants established, operated,
21  controlled, conducted, and participated in the conduct of, in
22  violation of Title 18, United States Code, Section 1962, which
23  interests, securities, claims, and rights are subject to forfeiture
24  to the United States under Title 18, United States Code,
25  Section 1963(a)(2); and

26  c.   property constituting and derived from proceeds
27  obtained, directly and indirectly, from racketeering activity and
28  unlawful debt collection, in violation of Title 18, United States

Code, Section 1962, which property is subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(3).

11.  The interests of said defendants subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $5,000,000 and all interests and proceeds traceable thereto, including but not limited to the following assets:

a.  Bank of America account number 01703-40000 in the name of Mokayef Capital, Inc., which was opened by defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on or about February 28, 2005;

b.  Wells Fargo Bank account number 73479200 in the name of Amir Mokayef Separate Property Trust, which was opened by defendant AMIR MOKAYEF as the trustee on or about May 20, 2009;

c.  Union Central policy number A00013128F in the name of "Mokayef Capital, Inc. 401k Profit Sharing Plan," which was opened by defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on or about February 19, 2010;

d.  AEI Accredited Investor Fund VI account number 0170540707 in the name of "Mokayef Capital Inc. 401K PSP," which was opened by defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on or about March 8, 2010;

e.  SEI Private Trust Company account number 415940 with a plan name of "Mokayef Capital, Inc. 401K," which was opened by defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on or about September 1, 2010;

//

//

f.     Wells Fargo Bank account number 677385759 in the name of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka JB, on or about May 6, 1994;

g.     Wells Fargo Bank account number 8633243194 in the name of Joseph Barrios Irrevocable Trust, which was opened by defendant JOSEPH BARRIOS, aka JB, as the trustee on or about January 4, 2008;

h.     Wells Fargo Bank account number 6786700523 in the name of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka JB, on or about May 17, 2012;

i.     an Audi R8, currently registered to Joseph Barrios, bearing VIN WUAVNAFG5BN001171, which was purchased by defendant JOSEPH BARRIOS, aka JB, in or about 2012; and

j.     the real property located at 5848 Soledad Road, La Jolla, California (which defendant AMIR MOKAYEF purchased on or about October 20, 2006), legally described as: Assessor's Parcel Number (APN) 358-192-10, Lot 42 of Soledad Corona Estates Unit No. 1 in the City of San Diego, County of San Diego, State of California, according to map thereof no. 4008, filed in the Office of the County Recorder of San Diego County on November 7, 1958.

## Substitute Property Forfeiture

12.   If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

//

1       e. has been commingled with other property which cannot

2    be subdivided without difficulty;

3    it is the intent of the United States, pursuant to Title 18, United

4    States Code, Section 1963(m), to seek forfeiture of any other property

5    of said defendants up to the value of the property listed above as

6    being subject to forfeiture.

7      13. Said defendants, and each of them, are jointly and severally

8    liable for the forfeiture obligations as alleged above.

9    All pursuant to Title 18, United States Code, Section 1963.

10   **Forfeiture Allegation 2**

11   **(ILLEGAL GAMBLING BUSINESS FORFEITURE)**

12     14. The allegations contained in Count 2 and paragraphs 1

13   through 4 are realleged and by their reference fully incorporated

14   herein for the purpose of alleging forfeiture to the United States of

15   America under Title 18, United States Code, Sections 981(a)(1)(C) and

16   1955(d), and Title 28, United States Code, Section 2461(c).

17     15. As a result of the violation of Title 18, United States

18   Code, Section 1955, as alleged in Count 2, defendants JAN HARALD

19   PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,

20   AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka

21   Sonny, RANDALL LEE IRWIN, aka Tyler, LARRY NEIL GOLD, aka Cat, CHARLES

22   EDWARD SULLIVAN, MICHAEL CHRISTOPHER IACO, EMED G. SIDAROS, aka Action

23   Ed, ISAAC PETE GHARIBEH, DUNZMY JUNE NGUYEN, TODD MICHAEL HEFLIN,

24   HOWARD ALAN BLUM, MICHAEL JOHN MASSEY, SALVATORE GIACOMO GROPPO,

25   NILESH KUMAR AMBUBHAI PATEL, aka Neil, BENJAMIN JOHN WILLIAM WEBER,

26   and MACHO SPORTS INTERNATIONAL CORP. have:

27   //

28   //

1      a.    property, real and personal, which constitutes and is
2  derived from proceeds traceable to a violation of Title 18,
3  United States Code, Section 1955; and

4      b.    property, including money, used in violation of
5  Title 18, United States Code, Section 1955.

6      16.   The interests of said defendants subject to forfeiture to
7  the United States under Title 18, United States Code,
8  Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code,
9  Section 2461(c), include but are not limited to at least $5,000,000
10 and all interests and proceeds traceable thereto, including but not
11 limited to the following assets:

12     a.    Bank of America account number 01703-40000 in the name
13 of Mokayef Capital, Inc., which was opened by defendant AMIR MOKAYEF
14 as the President of Mokayef Capital, Inc., on or about February 28,
15 2005;

16     b.    Wells Fargo Bank account number 73479200 in the name
17 of Amir Mokayef Separate Property Trust, which was opened by defendant
18 AMIR MOKAYEF as the trustee on or about May 20, 2009;

19     c.    Union Central policy number A00013128F in the name of
20 "Mokayef Capital, Inc. 401k Profit Sharing Plan," which was opened by
21 defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on
22 or about February 19, 2010;

23     d.    AEI Accredited Investor Fund VI account number
24 0170540707 in the name of "Mokayef Capital Inc. 401K PSP," which was
25 opened by defendant AMIR MOKAYEF as the President of Mokayef Capital,
26 Inc., on or about March 8, 2010;

27     e.    SEI Private Trust Company account number 415940 with
28 a plan name of "Mokayef Capital, Inc. 401K," which was opened by

1  defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on
2  or about September 1, 2010;

3          f.    Wells Fargo Bank account number 677385759 in the name
4  of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka
5  JB, on or about May 6, 1994;

6          g.    Wells Fargo Bank account number 8633243194 in the name
7  of Joseph Barrios Irrevocable Trust, which was opened by defendant
8  JOSEPH BARRIOS, aka JB, as the trustee on or about January 4, 2008;

9          h.    Wells Fargo Bank account number 6786700523 in the name
10 of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka
11 JB, on or about May 17, 2012;

12         i.    an Audi R8, currently registered to Joseph Barrios,
13 bearing VIN WUAVNAFG5BN001171, which was purchased by defendant JOSEPH
14 BARRIOS, aka JB, in or about 2012; and

15         j.    the real property located at 5848 Soledad Road,
16 La Jolla, California (which defendant AMIR MOKAYEF purchased on or
17 about October 20, 2006), legally described as: Assessor's Parcel
18 Number (APN) 358-192-10, Lot 42 of Soledad Corona Estates Unit No. 1
19 in the City of San Diego, County of San Diego, State of California,
20 according to map thereof no. 4008, filed in the Office of the County
21 Recorder of San Diego County on November 7, 1958.

22                      **Substitute Property Forfeiture**

23    17.   If any of the above-described forfeitable property, as a
24 result of any act or omission of said defendants —

25         a.    cannot be located upon the exercise of due diligence;
26         b.    has been transferred or sold to, or deposited with, a
27 third party;
28 //

14

1        c.   has been placed beyond the jurisdiction of the Court;

2        d.   has been substantially diminished in value; or

3        e.   has been commingled with other property which cannot

4 be subdivided without difficulty;

5 it is the intent of the United States, pursuant to Title 28, United

6 States Code, Section 2461(c), incorporating Title 21, United States

7 Code, Section 853(p), to seek forfeiture of any other property of said

8 defendants up to the value of the property listed above as being

9 subject to forfeiture.

10 All pursuant to Title 18, United States Code, Sections 981(a)(1)(C),

11 1955(d), and 1963, and Title 28, United States Code, Section 2461(c).

12     DATED: June 13, 2013.

13                      A TRUE BILL:

14

15                      Foreperson

16 LAURA E. DUFFY
United States Attorney

17

18 By:

    ANDREW G. SCHOPLER

19    Assistant U.S. Attorney

20

21

22

23

24

25

26

27

28

15