1

2          2013 OCT -3  PM 4: 22

3

4              UNITED STATES DISTRICT COURT

5              SOUTHERN DISTRICT OF CALIFORNIA

6                  December 2012 Grand Jury

7  UNITED STATES OF AMERICA,          Case No.  13CR2196-JLS

8                    Plaintiff,       I N D I C T M E N T
                                         (Superseding)
9          v.

10 JAN HARALD PORTOCARRERO (1),       Title 18, U.S.C., Sec. 1962(d) —
        aka Leo,                      **Racketeering Conspiracy to Conduct
11 ERIK PORTOCARRERO (2),             Enterprise Affairs (RICO
        aka Bo,                       Conspiracy)**; Title 18, U.S.C.,
12      aka The Clam Eater,           Sec. 1955 — **Illegal Gambling
   AMIR MOKAYEF (3),                  Business**; Title 18, U.S.C.,
13 JOSEPH BARRIOS (4),                Sec. 1956(h) — **Money Laundering
        aka JB,                       Conspiracy**; Title 18, U.S.C.,
14 YOUNG HEE KOH (5),                 Secs. 981(a)(1)(C), 982, 1955(d),
        aka Ace,                      and 1963, and Title 28, U.S.C.,
15      aka Sonny,                    Sec. 2461(c) — **Criminal Forfeiture**
   RANDALL LEE IRWIN (6),
16      aka Tyler,
   LARRY NEIL GOLD (7),
17      aka Cat,
   CHARLES EDWARD SULLIVAN (8),
18 MICHAEL CHRISTOPHER IACO (9),
   EMED G. SIDAROS (10),
19      aka Action Ed,
   ISAAC PETE GHARIBEH (11),
20 DUNZMY JUNE NGUYEN (12),
   TODD MICHAEL HEFLIN (13),
21 HOWARD ALAN BLUM (14),
   MICHAEL JOHN MASSEY (15),
22 SALVATORE GIACOMO GROPPO (16),
   NILESH KUMAR AMBUBHAI PATEL (17),
23      aka Neil,
   BENJAMIN JOHN WILLIAM WEBER (18),
24 MACHO SPORTS INTERNATIONAL
      CORP. (19),
25
                  Defendants.
26

27

28

AGS:nlv:San Diego
10/3/13

The grand jury charges:

## Introductory Allegations

### THE ENTERPRISE

1.   At all times material to this Indictment:

a.   Defendants JAN HARALD PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater, AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka Sonny, MACHO SPORTS INTERNATIONAL CORP., and others constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter collectively referred to as "MACHO SPORTS"), that is, a group of individuals and a corporation and legal entity associated in fact.

b.   MACHO SPORTS was engaged in, and its activities affected, interstate and foreign commerce.

c.   MACHO SPORTS constituted an ongoing organization, whose members functioned as a continuing unit, for the common purpose of achieving MACHO SPORTS' objectives.

### OBJECTIVES OF THE ENTERPRISE

2.   MACHO SPORTS' objectives included the following:

a.   Enriching its leaders, members, and associates through extortionate debt collection, an illegal gambling business, transmission of wagering information, bookmaking, using telephones and the Internet in aid of racketeering, and other crimes;

b.   Ensuring its customers' prompt payment of gambling debts through the use of intimidation, threats, and violence, as well as fostering a violent reputation as to its treatment of delinquent customers;

c.   Avoiding detection of its illicit conduct by, among other things, laundering its illegal proceeds;

2

1    d.    Evading  law  enforcement  by,  among  other  things,
2  maintaining MACHO SPORTS' headquarters and the physical platform for
3  its Internet operations outside the United States; and

4    e.    Enhancing its power and financial profits by promoting
5  MACHO SPORTS' activities with customers and potential customers.

6                    ## ORGANIZATIONAL STRUCTURE AND ROLES

7    3.    At all times material to this Indictment, MACHO SPORTS had
8  the   following   organizational   structure,   with   various   members,
9  employees, and associates occupying the following roles:

10                              ### The Company

11   a.    MACHO SPORTS INTERNATIONAL CORP. (hereinafter referred
12 to as "MSIC") operated Internet sports gambling websites, including
13 www.machosports.com and www.betmacho.com, hosted on servers primarily
14 located  outside  the  United  States.    MSIC  also  operated  toll-free
15 telephone  services  to  facilitate  sports  betting.    MACHO  SPORTS
16 operated within the United States by, among other things, offering,
17 conducting, and facilitating unlawful computer- and telephone service-
18 based sports gambling using MSIC's websites and toll-free telephone
19 numbers.   MSIC was registered in Panama on or about May 2, 2002, and
20 was   granted   power   of   attorney   to   operate   in   Peru   on   or   about
21 November 13, 2008.   Since 2008, MSIC has been headquartered in Lima,
22 Peru.

23                              ### Leaders

24   b.    The founders and leaders of MACHO SPORTS are defendants
25 JAN HARALD PORTOCARRERO, aka Leo, and ERIK PORTOCARRERO, aka Bo, aka
26 The Clam Eater.   They controlled MACHO SPORTS' operations primarily
27 from MSIC's headquarters in Lima, Peru, where they employed numerous
28 telephone operators and several managers.

                                    3

**Managers**

1

2          c.    The managers at MSIC's headquarters, such as defendant

3   YOUNG HEE KOH, aka Ace, aka Sonny, oversaw the enterprise's telephone

4   and internet operations, resolved disputes, and adjusted customers'

5   lines of credit and online accounts.

6                                   **Bookies**

7          d.    MACHO SPORTS had various bookmakers ("bookies"), such

8   as AMIR MOKAYEF (who operated primarily in the Southern District of

9   California) and JOSEPH BARRIOS, aka JB (who operated primarily in the

10  Central District of California).    The bookies were responsible for

11  recruiting customers, paying off winning bets, and collecting on

12  losing bets.   Bookies, such as MOKAYEF and BARRIOS, also often managed

13  their own network of bookmakers ("sub-bookies"), who recruited and

14  dealt with customers.

15                                 **Sub-Bookies**

16         e.    Each sub-bookie was responsible for his or her own

17  "package," which refers to all the customer accounts managed by that

18  sub-bookie.   Sub-bookies recruited customers, paid off winning bets,

19  collected on losing bets, and delivered payments to the managing

20  bookie.

21                          **Runners for MACHO SPORTS**

22         f.    MACHO SPORTS used "runners" who dealt directly with

23  customers on behalf of its various bookies.    These runners, such as

24  RANDALL LEE IRWIN, aka Tyler, and LARRY NEIL GOLD, aka Cat, handled

25  customer payments and collections.

26  //

27  //

28  //

                                       4

**Collectors for MACHO SPORTS**

g.     MACHO     SPORTS     also     employed     "collectors,"     who specialized in more aggressive measures to obtain payment on gambling debts, including intimidation, threats, and violence.

**METHODS AND MEANS OF THE RACKETEERING CONSPIRACY**

4.     In  furtherance  of  the  racketeering  conspiracy  charged  in Count 1, MACHO SPORTS utilized the following methods and means, among others:

a.     To further the objectives of evading law enforcement and enriching its members, employees, and associates, MACHO SPORTS operated MSIC's headquarters in Lima, Peru, and located the physical platform for its Internet operations outside the United States.

b.     Bookies  and  sub-bookies  recruited  customers  in  the Southern District of California and elsewhere.  Then they supplied the customers with an account number and password for accessing their gambling accounts on MACHO SPORTS' websites.  Bookies and sub-bookies instructed their customers that they could place bets with their bookmaker, or by calling MACHO SPORTS' toll-free numbers, or through their online accounts on the MACHO SPORTS websites.

c.     MACHO  SPORTS  typically  extended  credit  to  new customers, so they could begin sports betting without pre-funding their accounts.  MACHO SPORTS also provided further extensions of credit to existing customers, so that those customers could wager larger amounts of money than their prior extensions of credit allowed.

//
//
//
//

5

d.   MACHO SPORTS used facilities in interstate and foreign commerce, such as telephones and Internet websites, to facilitate its illegal bookmaking and gambling activities.

e.   To further the objectives of ensuring prompt payment as well as enriching MACHO SPORTS, the enterprise fostered a violent reputation about its treatment of delinquent customers.  To this end, and because MACHO SPORTS could not rely on the legal system for debt collection, the enterprise used intimidation, threats, and violence against its customers, especially when customers were late in paying their gambling debts.

f.   MACHO SPORTS laundered many of its illegal proceeds by inducing customers to pay their gambling losses to various entities that appeared to be unrelated to MACHO SPORTS, such as check-cashing businesses.  MACHO SPORTS members would later obtain the funds, or a portion thereof, from these collaborating entities, and in this way concealed the illicit nature of the funds.

## Count 1

### (RACKETEERING CONSPIRACY)

5.   Paragraphs 1 through 4 are realleged and incorporated by reference herein.

6.   Beginning at least as early as 1995 and continuing up to and including June 19, 2013, within the Southern District of California and elsewhere, defendants JAN HARALD PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater, AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka Sonny, MACHO SPORTS INTERNATIONAL CORP., and others, being persons employed by and associated with MACHO SPORTS, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

6

knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of MACHO SPORTS' affairs through a pattern of racketeering activity, as set forth below, and through the collection of unlawful debt, as set forth below.

a. The pattern of racketeering activity, as that phrase is defined by Title 18, United States Code, Sections 1961(1) and (5), consisted of multiple acts involving gambling, chargeable under Cal. Penal Code § 337a (bookmaking), which is punishable by imprisonment for more than one year, and multiple acts indictable under the following provisions of Title 18, United States Code:

i. Title 18, United States Code, Section 894 (extortionate debt collection);

ii. Title 18, United States Code, Section 1084 (transmission of wagering information);

iii. Title 18, United States Code, Section 1952 (Travel Act/phone and Internet use in aid of racketeering enterprises);

iv. Title 18, United States Code, Section 1955 (illegal gambling business); and

v. Title 18, United States Code, Sections 1956 and 1957 (money laundering).

It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of MACHO SPORTS' affairs.

b. The unlawful debt, as that phrase is defined by Title 18, United States Code, Section 1961(6), consisted of debts incurred and contracted in gambling activity which was in violation of the law of the United States and the law of the State of California

1  and which was incurred in connection with the business of gambling in
2  violation of the law of the United States and the law of the State of
3  California.   It was a part of the conspiracy that each defendant
4  agreed that a conspirator would commit at least one collection of
5  unlawful debt in the conduct of MACHO SPORTS' affairs.
6  All in violation of Title 18, United States Code, Section 1962(d).

## Count 2

### (ILLEGAL GAMBLING BUSINESS)

9      7.   Paragraphs 1 through 4 are realleged and incorporated by
10  reference herein.
11      8.   Beginning on a date unknown but at least as early as 1995,
12  and continuing up to and including June 19, 2013, within the Southern
13  District   of   California   and   elsewhere,   defendants   JAN   HARALD
14  PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,
15  AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka
16  Sonny, RANDALL LEE IRWIN, aka Tyler, LARRY NEIL GOLD, aka Cat, CHARLES
17  EDWARD SULLIVAN, MICHAEL CHRISTOPHER IACO, EMED G. SIDAROS, aka Action
18  Ed,   ISAAC   PETE   GHARIBEH,   DUNZMY   JUNE   NGUYEN,   TODD   MICHAEL   HEFLIN,
19  HOWARD   ALAN   BLUM,   MICHAEL   JOHN   MASSEY,   SALVATORE   GIACOMO   GROPPO,
20  NILESH KUMAR AMBUBHAI PATEL, aka Neil, BENJAMIN JOHN WILLIAM WEBER,
21  and   MACHO   SPORTS   INTERNATIONAL   CORP.   knowingly   and   intentionally
22  conducted, financed, managed, supervised, directed, and owned all and
23  part of MACHO SPORTS, an illegal gambling business involving sports
24  bookmaking, which gambling business was a violation of the law of the
25  State of California in which it was conducted (that is, in violation
26  of California Penal Code, Section 337a), and which involved at least
27  five persons who conducted, financed, managed, supervised, directed,
28  and   owned   all   and   part   of   MACHO   SPORTS,   and   which   remained   in

8

1  substantially continuous operation for a period in excess of thirty

2  days and had a gross revenue of at least $2,000 in any single day; in

3  violation of Title 18, United States Code, Section 1955.

### Count 3

#### (MONEY LAUNDERING CONSPIRACY)

6  9.  Paragraphs 1 through 4 are realleged and incorporated by

7  reference herein.

8  10.  Beginning at least as early as August 2009 and continuing up

9  to and including June 19, 2013, within the Southern District of

10 California and elsewhere, defendant ERIK PORTOCARRERO, aka Bo, aka The

11 Clam Eater, and others knowingly and intentionally conspired to:

12  a.  conduct financial transactions affecting interstate and

13 foreign commerce that involve the proceeds of specified unlawful

14 activity, knowing that the property involved in these financial

15 transactions represent the proceeds of some form of unlawful activity,

16 and knowing that the transaction is designed in whole and in part to

17 conceal and disguise the nature, the location, the source, the

18 ownership, and the control of the proceeds of specified unlawful

19 activity, in violation of Title 18, United States Code, Section

20 1956(a)(1)(B)(i);

21  b.  transport, transmit, and transfer monetary instruments

22 and funds from a place in the United States to and through a place

23 outside the United States, with the intent to promote the carrying on

24 of specified unlawful activity, in violation of Title 18,

25 United States Code, Section 1956(a)(2)(A);

26  c.  transport, transmit, and transfer monetary instruments

27 and funds from a place in the United States to and through a place

28 outside the United States, knowing that the monetary instruments and

1 funds involved in the transportation, transmission, and transfer
2 represented the proceeds of some form of unlawful activity and knowing
3 that such transportation, transmission, and transfer was designed in
4 whole and in part to conceal and disguise the nature, the location,
5 the source, the ownership, and the control of the proceeds of
6 specified unlawful activity, in violation of Title 18, United States
7 Code, Section 1956(a)(2)(B)(i); and

8        d.   engage in monetary transactions in criminally derived
9 property of a value greater than $10,000, derived from specified
10 unlawful activity, in and affecting interstate and foreign commerce,
11 and taking place within the Central and Southern Districts of
12 California, in violation of Title 18, United States Code,
13 Section 1957.

14           **METHODS AND MEANS OF THE MONEY LAUNDERING CONSPIRACY**

15    11.   In furtherance of the money laundering conspiracy charged in
16 Count 3, defendant ERIK PORTOCARRERO and others utilized the following
17 methods and means, among others:

18        a.   ERIK PORTOCARRERO directed MACHO SPORTS runners,
19 including defendants RANDALL LEE IRWIN, aka Tyler (charged elsewhere),
20 and LARRY NEIL GOLD, aka Cat (charged elsewhere), to collect gambling
21 debts from MACHO SPORTS customers in the Central and Southern
22 Districts of California and to launder the illegal gambling proceeds.

23        b.   ERIK PORTOCARRERO provided IRWIN and GOLD user IDs and
24 passwords to one of his websites (www.SkyTravelPeru.com), which he
25 used to provide secure online instructions to IRWIN and GOLD about
26 gambling debt collection and money laundering.  ERIK PORTOCARRERO also
27 used this website to keep an accounting of the "bank," or total amount
28 of illegal gambling proceeds, held by both IRWIN and GOLD.

1

## Money Laundering by Check Cashing

2      c.   For the purpose of laundering betting customer debt
3  payments, ERIK PORTOCARRERO:

4          i.   Directed GOLD to deliver all betting customers'
5  checks to IRWIN.

6          ii.  Ordered  IRWIN  to  deliver  all  the  betting
7  customers' checks that he received to an individual whose initials are
8  "C.T.," who was the operator of Santa Monica Check Cashing, Etc., LLC
9  ("SANTA MONICA CHECK CASHING"), at 1705 Pico Blvd., Santa Monica,
10 California.

11         iii. Instructed  IRWIN  that  C.T.  would  provide  the
12 details for each check delivery.  Specifically, ERIK PORTOCARRERO left
13 C.T. in charge of providing IRWIN the payee name for each check.

14     d.   Although the customers owed their gambling debts to
15 MACHO SPORTS, the customers were instructed to make the checks payable
16 to third parties, in order to conceal the nature, location, source,
17 ownership, and control of the illegal gambling proceeds.

18     e.   At various times, C.T. instructed IRWIN to have betting
19 customers make out their gambling debt checks to one of four persons
20 or entities associated with C.T.  For example, at one point C.T.
21 instructed IRWIN to have betting customers make out their checks to
22 "Cash Cow, Inc."  C.T. is the owner of the Republic Bank of Chicago
23 checking account for "Cash Cow, Inc.," which lists its business
24 address as 1705 Pico Blvd., Santa Monica, California (the same
25 business address as SANTA MONICA CHECK CASHING).

26 //
27 //
28 //


1        f.   IRWIN relayed C.T.'s instructions about the payee name
2 for the checks to MACHO SPORTS bookies, such as defendants **AMIR**
3 **MOKAYEF** (charged elsewhere) and JOSEPH BARRIOS, aka JB (charged
4 elsewhere), who directed their betting customers to make out their
5 gambling debt checks to the appropriate person or entity.

6        g.   In accordance with ERIK PORTOCARRERO's orders, IRWIN
7 delivered the customers' checks to C.T., usually at SANTA MONICA CHECK
8 CASHING, and C.T. cashed the checks, providing IRWIN the cash amount
9 for each check, minus a fee.  Typically, C.T. provided about half of
10 the cash amount for the checks to IRWIN immediately and the remainder
11 after the checks cleared.

12        h.   IRWIN provided C.T. numerous betting customer checks
13 that were in amounts greater than $10,000, and often provided C.T.
14 tens of thousands of dollars worth of betting customer checks on a
15 weekly basis.

16                  **International Transportation Money Laundering**

17        i.   ERIK PORTOCARRERO ordered IRWIN to mail some checks,
18 representing MACHO SPORTS' illegal gambling proceeds, to Norway.

19        j.   Specifically, ERIK PORTOCARRERO instructed IRWIN that
20 some MACHO SPORTS members or customers would provide him checks made
21 out to ERIK PORTOCARRERO's mother, whose initials are "A.P.," and on
22 those occasions IRWIN should mail these checks to A.P. in Norway.

23        k.   MACHO SPORTS members and customers in fact provided
24 IRWIN checks made payable to A.P., which represented illegal gambling
25 proceeds, and each of the checks was individually worth greater than
26 $10,000.  IRWIN mailed these checks from the Central District of
27 California to A.P. in Norway.

28

1     1. These checks were all intended to benefit ERIK
2 PORTOCARRERO and MACHO SPORTS, but they were made payable to A.P. in
3 order to conceal the location, source, ownership, and control of the
4 illegal gambling proceeds.

5 All in violation of Title 18, United States Code, Section 1956(h).

6                   **Forfeiture Allegation 1**

7             **(RACKETEERING CONSPIRACY FORFEITURE)**   .

8     12. The allegations contained in Count 1 and paragraphs 1
9 through 4 are realleged and by their reference fully incorporated
10 herein for the purpose of alleging forfeiture to the United States of
11 America under Title 18, United States Code, Section 1963.

12     13. As a result of the violation of Title 18, United States
13 Code, Section 1962, as alleged in Count 1, defendants JAN HARALD
14 PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,
15 AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka
16 Sonny, and MACHO SPORTS INTERNATIONAL CORP. have:

17         a. acquired and maintained interests in violation of
18 Title 18, United States Code, Section 1962, which interests are
19 subject to forfeiture to the United States under Title 18, United
20 States Code, Section 1963(a)(1);

21         b. an interest in, security of, claims against, and
22 property and contractual rights affording a source of influence over
23 MACHO SPORTS, which these defendants established, operated,
24 controlled, conducted, and participated in the conduct of, in
25 violation of Title 18, United States Code, Section 1962, which
26 interests, securities, claims, and rights are subject to forfeiture to
27 the United States under Title 18, United States Code,
28 Section 1963(a)(2); and

1          c.    property   constituting   and   derived   from   proceeds

2 obtained, directly and indirectly, from racketeering activity and

3 unlawful debt collection, in violation of Title 18, United States

4 Code, Section 1962, which property is subject to forfeiture to the

5 United States under Title 18, United States Code, Section 1963(a)(3).

6    14.  The interests of said defendants subject to forfeiture to

7 the    United   States   under   Title   18,   United   States   Code,

8 Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to

9 at least $15,000,000 and all interests and proceeds traceable thereto,

10 including but not limited to the following assets:

11       a.   Bank of America account number 01703-40000 in the name

12 of Mokayef Capital, Inc., which was opened by defendant AMIR MOKAYEF

13 as the President of Mokayef Capital, Inc., on or about February 28,

14 2005;

15       b.   Wells Fargo Bank account number 73479200 in the name of

16 Amir Mokayef Separate Property Trust, which was opened by defendant

17 AMIR MOKAYEF as the trustee on or about May 20, 2009;

18       c.   Union Central policy number A00013128F in the name of

19 "Mokayef Capital, Inc. 401k Profit Sharing Plan," which was opened by

20 defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on

21 or about February 19, 2010;

22       d.   AEI Accredited Investor Fund VI account number

23 0170540707 in the name of "Mokayef Capital Inc. 401K PSP," which was

24 opened by defendant AMIR MOKAYEF as the President of Mokayef Capital,

25 Inc., on or about March 8, 2010;

26       e.   SEI Private Trust Company account number 415940 with a

27 plan name of "Mokayef Capital, Inc. 401K," which was opened by

28

1  defendant AMIR MOKAYEF as the President of Mokayef Capital, Inc., on
2  or about September 1, 2010;

3      f.  Wells Fargo Bank account number 677385759 in the name
4  of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka
5  JB, on or about May 6, 1994;

6      g.  Wells Fargo Bank account number 8633243194 in the name
7  of Joseph Barrios Irrevocable Trust, which was opened by defendant
8  JOSEPH BARRIOS, aka JB, as the trustee on or about January 4, 2008;

9      h.  Wells Fargo Bank account number 6786700523 in the name
10 of Joseph Barrios, which was opened by defendant JOSEPH BARRIOS, aka
11 JB, on or about May 17, 2012;

12     i.  an Audi R8, currently registered to Joseph Barrios,
13 bearing VIN WUAVNAFG5BN001171, which was purchased by defendant JOSEPH
14 BARRIOS, aka JB, in or about 2012;

15     j.  the real property located at 5848 Soledad Road, La
16 Jolla, California (which defendant AMIR MOKAYEF purchased on or about
17 October 20, 2006), legally described as: Assessor's Parcel Number
18 (APN) 358-192-10, Lot 42 of Soledad Corona Estates Unit No. 1 in the
19 City of San Diego, County of San Diego, State of California, according
20 to map thereof no. 4008, filed in the Office of the County Recorder of
21 San Diego County on November 7, 1958;

22     k.  $65,703.00 in U.S. currency seized from 5848 Soledad
23 Rd., La Jolla, California (defendant AMIR MOKAYEF's residence);

24     l.  €2,065 in Euro currency seized from 5848 Soledad Rd.,
25 La Jolla, California (defendant AMIR MOKAYEF's residence);

26     m.  Chase Bank Cashier's Check No. 1461810323 in the amount
27 of $10,000.00, payable to "Joe Bradley" and dated April 24, 2013,

28

seized from 6323 Residencia, Newport Beach, California (defendant AMIR MOKAYEF's apartment);

n.   $2,199,526.00 in U.S. currency seized from safe deposit box number W9787 at Bank of America, 7680 Girard Ave., La Jolla, California (a safety deposit box assigned to an individual with the initials "J.F.," but which was used to conceal currency belonging to defendant AMIR MOKAYEF);

o.   $31,710.00 in U.S. currency seized from 2809 Ocean Front Walk, Unit 2, Venice, California (defendant JOSEPH BARRIOS's residence);

p.   $44,782.00 in U.S. currency seized from 464 N. Ogden Dr., Apt. 2, Los Angeles, California (defendant RANDALL LEE IRWIN's residence);

q.   $496,500.00 in U.S. currency seized from the basement of 464 N. Ogden Dr., Los Angeles, California (a basement that was used by defendant RANDALL LEE IRWIN);

r.   $58,600.00 in U.S. currency seized from 7657 Hinds Ave., North Hollywood, California (defendant LARRY NEIL GOLD's residence);

s.   $150,000 in U.S. currency seized from a safe in the garage of 7657 Hinds Ave., North Hollywood, California (defendant LARRY NEIL GOLD's residence);

t.   $6,007.00 in U.S. currency seized from 5227 Soledad Mountain Rd., San Diego, California (defendant MICHAEL CHRISTOPHER IACO's residence);

u.   $38,750.00 in U.S. currency seized from 7401 El Manor Ave., Los Angeles, California (defendant EMED G. SIDAROS's residence);

v.    $800.00 in U.S. currency seized from 6660 W. 87th Place, Los Angeles, California (defendant ISAAC PETE GHARIBEH's residence);

w.    $2,337.00 in U.S. currency seized from 25 Jib St., Apt. 2, Marina Del Rey, California (defendant DUNZMY JUNE NGUYEN's residence);

x.    31 Green Dot Money Paks, one Visa card bearing account number 4941594511903375, and one Visa Green Dot Card bearing number 4606970018531701, all seized from 25 Jib St., Apt. 2, Marina Del Rey, California (defendant DUNZMY JUNE NGUYEN's residence);

y.    $88,400.00 in U.S. currency seized from 23671 Elkwood St., West Hills, California (defendant TODD MICHAEL HEFLIN's residence);

z.    $24,688.00 in U.S. currency seized from 6837 Citrine Dr., Carlsbad, California (defendant HOWARD ALAN BLUM's residence);

aa.   $377.00 in U.S. currency, seized from 13350 Greenstone St., San Diego, California (defendant SALVATORE GIACOMO GROPPO's residence);

bb.   $3,469.00 in U.S. currency seized from 5136 W. Washington Blvd., Los Angeles, California (defendant NILESH KUMAR AMBUBHAI PATEL's residence);

cc.   one Visa Green Dot Card, bearing account number 42503200004952991 and the name of Nilesh Patel, and two Green Dot Money Paks, all seized from 5136 W. Washington Blvd., Los Angeles, California (defendant NILESH KUMAR AMBUBHAI PATEL's residence);

dd.   DNB ASA bank account number 70140441870, belonging to defendant JAN HARALD PORTOCARRERO;

1    ee.  DNB ASA bank account number 12030225293, belonging to
2  defendant JAN HARALD PORTOCARRERO;

3    ff.  DNB ASA bank account number 73146604266, belonging to
4  defendant JAN HARALD PORTOCARRERO;

5    gg.  DNB ASA bank account number 73147104739, belonging to
6  defendant JAN HARALD PORTOCARRERO;

7    hh.  9,771,162  Norwegian  kroner  (valued  at  roughly
8  $1.6 million  as  of  October  2013)  in  DNB  ASA  bank  account  number
9  73146642168,  which  is  an  account  belonging  to  an  individual  with  the
10  initials  "A.P."  (on  or  about  May  10,  2013,  defendant  JAN  HARALD
11  PORTOCARRERO transferred the 9,771,162 kroner into this account);

12    ii.  the  real  property  located  at  Nyvei  21,  4900
13  Tvedestrand, Norway (which defendant JAN HARALD PORTOCARRERO purchased
14  on or about July 31, 2007), legally described as: Knr 0914 gnr 74 bnr
15  142 seksjonsnr 9;

16    jj.  a  Brig  Eagle  645  motorboat,  bearing  identification
17  number N7551537S (belonging to defendant JAN HARALD PORTOCARRERO);

18    kk.  DNB ASA bank account number 73141077667, belonging to
19  defendant ERIK PORTOCARRERO;

20    ll.  DNB ASA bank account number 70140441862, belonging to
21  defendant ERIK PORTOCARRERO;

22    mm.  DNB ASA bank account number 73146340463, belonging to
23  defendant ERIK PORTOCARRERO;

24    nn.  the  real  property  located  at  Nyvei  21,  4900
25  Tvedestrand, Norway (which defendant ERIK PORTOCARRERO purchased on or
26  about  July  19,  2007),  legally  described  as:  Knr  0914  gnr  74  bnr  142
27  seksjonsnr 16;

28

1       oo.   the  real  property  located  at  Bygdøynesveien 34A, 0301

2  Oslo, Norway (which defendant ERIK PORTOCARRERO purchased on or about

3  April 30, 2013), legally described as: Knr 0301 gnr 2 bnr 1077; and

4       pp.   a Norkapp Avant 600 motorboat, bearing identification

5  number N3005084S (belonging to defendant ERIK PORTOCARRERO).

6                  **Substitute Property Forfeiture**

7       15.   If  any  of  the  above-described  forfeitable  property,  as  a

8  result of any act or omission of said defendants —

9            a.   cannot be located upon the exercise of due diligence;

10           b.   has  been  transferred  or  sold  to,  or  deposited  with,  a

11  third party;

12           c.   has been placed beyond the jurisdiction of the Court;

13           d.   has been substantially diminished in value; or

14           e.   has been commingled with other property which cannot be

15  subdivided without difficulty;

16  it is the intent of the United States, pursuant to Title 18, United

17  States Code, Section 1963(m), to seek forfeiture of any other property

18  of said defendants up to the value of the property listed above as

19  being subject to forfeiture.

20       16.   Said defendants, and each of them, are jointly and severally

21  liable for the forfeiture obligations as alleged above.

22  All pursuant to Title 18, United States Code, Section 1963.

23                    **Forfeiture Allegation 2**

24            **(ILLEGAL GAMBLING BUSINESS FORFEITURE)**

25       17.   The  allegations  contained  in  Count  2  and  paragraphs  1

26  through 4 are realleged and by their reference fully incorporated

27  herein for the purpose of alleging forfeiture to the United States of

28

                                19

1 | America under Title 18, United States Code, Sections 981(a)(1)(C) and
2 | 1955(d), and Title 28, United States Code, Section 2461(c).

3 |     18.  As a result of the violation of Title 18, United States
4 | Code, Section 1955, as alleged in Count 2, defendants JAN HARALD
5 | PORTOCARRERO, aka Leo, ERIK PORTOCARRERO, aka Bo, aka The Clam Eater,
6 | AMIR MOKAYEF, JOSEPH BARRIOS, aka JB, YOUNG HEE KOH, aka Ace, aka
7 | Sonny, RANDALL LEE IRWIN, aka Tyler, LARRY NEIL GOLD, aka Cat, CHARLES
8 | EDWARD SULLIVAN, MICHAEL CHRISTOPHER IACO, EMED G. SIDAROS, aka Action
9 | Ed, ISAAC PETE GHARIBEH, DUNZMY JUNE NGUYEN, TODD MICHAEL HEFLIN,
10 | HOWARD ALAN BLUM, MICHAEL JOHN MASSEY, SALVATORE GIACOMO GROPPO,
11 | NILESH KUMAR AMBUBHAI PATEL, aka Neil, BENJAMIN JOHN WILLIAM WEBER,
12 | and MACHO SPORTS INTERNATIONAL CORP. have:

13 |     a.  property, real and personal, which constitutes and is
14 | derived from proceeds traceable to a violation of Title 18, United
15 | States Code, Section 1955; and

16 |     b.  property, including money, used in violation of
17 | Title 18, United States Code, Section 1955.

18 |     19.  The interests of said defendants subject to forfeiture to
19 | the United States under Title 18, United States Code,
20 | Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code,
21 | Section 2461(c), include but are not limited to at least $15,000,000
22 | and all interests and proceeds traceable thereto, including but not
23 | limited to all the assets listed in the subparagraphs under
24 | paragraph 14, which are fully incorporated herein by reference.

25 | //
26 | //
27 | //
28 | //

20

## Substitute Property Forfeiture

20. If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1955(d), and 1963, and Title 28, United States Code, Section 2461(c).

## Forfeiture Allegation 3

### (MONEY LAUNDERING CONSPIRACY FORFEITURE)

21. The allegations contained in Count 3 and paragraphs 1 through 4 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Section 982(a)(1).

22. As a result of the violation of Title 18, United States Code, Section 1956, as alleged in Count 3, defendant ERIK PORTOCARRERO, aka Bo, aka The Clam Eater, has property, real and personal, which was involved in such offense, and property traceable to such property.

23.    The interests of said defendant subject to forfeiture to the United States under Title 18, United States Code, Section 982(a)(1), include but are not limited to at least $7,000,000 and all interests and proceeds traceable thereto, including but not limited to:

a.    DNB ASA bank account number 73141077667, belonging to defendant ERIK PORTOCARRERO;

b.    DNB ASA bank account number 70140441862, belonging to defendant ERIK PORTOCARRERO;

c.    DNB ASA bank account number 73146340463, belonging to defendant ERIK PORTOCARRERO;

d.    the real property located at Nyvei 21, 4900 Tvedestrand, Norway (which defendant ERIK PORTOCARRERO purchased on or about July 19, 2007), legally described as: Knr 0914 gnr 74 bnr 142 seksjonsnr 16;

e.    the real property located at Bygdøynesveien 34A, 0301 Oslo, Norway (which defendant ERIK PORTOCARRERO purchased on or about April 30, 2013), legally described as: Knr 0301 gnr 2 bnr 1077; and

f.    a Norkapp Avant 600 motorboat, bearing identification number N3005084S (belonging to defendant ERIK PORTOCARRERO).

**Substitute Property Forfeiture**

24.    If any of the above-described forfeitable property, as a result of any act or omission of said defendant —

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

22

1      e.   has been commingled with other property which cannot be
2   subdivided without difficulty;
3   it is the intent of the United States, pursuant to Title 21, United
4   States Code, Section 853(p), and Title 18, United States Code,
5   Section 982(b), to seek forfeiture of any other property of said
6   defendant up to the value of the property listed above as being
7   subject to forfeiture.
8   All pursuant to Title 18, United States Code, Section 982.
9        DATED:  October 3, 2013.

10                                           A TRUE BILL:

11

12                                           Foreperson

13   LAURA E. DUFFY
     United States Attorney
14

15   By: _____
16        ANDREW G. SCHOPLER
          Assistant U.S. Attorney
17

18

19

20

21

22

23

24

25

26

27

28

                              23