UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>SALVATORE G. GROPPO,<br><br>                              Defendant. | Case No.: 13-CR-2196 JLS<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION TO EXPUNGE HIS FELONY CONVICTION AND<br>(2) GRANTING DEFENDANT'S MOTION TO WITHDRAW REPLY**<br><br>(ECF Nos. 1041 & 1046) |

      Presently before the Court is Defendant Salvatore G. Groppo's ("Defendant" or "Groppo") Motion to Expunge his Felony Conviction ("Mot.," ECF No. 1041). Also before the Court are Plaintiff United States of America's (the "Government") Opposition thereto ("Opp'n," ECF No. 1044) and Defendant's Reply in support thereof ("Reply," ECF No. 1047).[1] Having carefully considered the Parties' arguments and the law, the Court **DENIES** Defendant's Motion, for the reasons that follow.

/ / /

---

[1] Defendant docketed a Reply earlier the same day (ECF No. 1045), followed by a Motion to Withdraw the same (ECF No. 1046). Accordingly, the Court **GRANTS** the Motion to Withdraw and relies solely on the latter-filed Reply.

# BACKGROUND

On June 19, 2013, Defendant was arrested and arraigned for his involvement with Macho Sports International Corporation, "an illegal gambling business headquartered in Lima, Peru," that was led by Amir Mokayef, a social acquaintance of Defendant's. Mot. at 4–6.[2] Defendant was released the following day on a personal surety bond. *Id.* at 5; ECF No. 50.

On March 3, 2014, Defendant entered into a plea agreement, "swear[ing] under penalty of perjury that the facts in the 'Factual Basis' section . . . are true." ECF No. 468 ("Plea") at 16. The Plea provided that, "[f]rom at least 2012 until June 19, 2013, . . . Defendant was a sub-bookie in the Macho Sports bookmaking organization." *Id.* at 3–4. Defendant pled guilty to a two-count Superseding Information charging him with transmitting wagering information on an aiding and abetting theory. *Id.* at 1–5. Defendant expressly agreed that "[t]his plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant." *Id.* at 8.

On March 28, 2014, this Court accepted Defendant's guilty plea. *See* ECF No. 509. At Defendant's sentencing on August 29, 2014, the Court also accepted the Parties' joint request to withdraw Defendant's guilty plea as to count 2 of the Superseding Information. *See* ECF No. 716. The Court then sentenced Defendant to five years' probation, 200 hours of community service, a $3,000 fine, and a $100 special assessment. *Id.*; ECF No. 726; Mot. at 5; Opp'n at 2. On August 28, 2017, three years into Defendant's probation, the Court granted the Parties' joint motion for early termination of his probation period. *See* ECF No. 1004.

---

[2] Throughout this Order, the Court's pincites refer to the blue page numbers stamped in the upper righthand corner of each document by the District's CM/ECF system.

"Since that time, Mr. Groppo has continued to be a hard-working, dedicated family man," who has "tried, thus far unsuccessfully, to launch his own corporate business because of the direct consequences of his felony conviction." Mot. at 5. Defendant claims that his conviction has resulted in "employment ramifications"; "distorted media/internet unfair characterization"; an inability to "open[] new college savings accounts for his two children," given that "[his] conviction makes him an apparent liability for banks"; and an "excise tax" liability "for well over $100,000.00" imposed by the Internal Revenue Service (the "IRS"). *Id.* at 7–8. Defendant notes that "[his] IRS lawyer advised him to just settle for approximately $40,000.00 to avoid being held liable for well over $100,000.00," which advice Defendant apparently took. *Id.*

On August 26, 2022, Defendant filed the instant Motion seeking expungement of his conviction. *See generally* Mot. On September 28, 2022, the Court issued an Order requiring the Government to respond to the Motion, *see* ECF No. 1043, and the Opposition and Reply timely followed, *see* Opp'n; Reply.

## LEGAL STANDARD

"[A] defendant who seeks expungement requests 'the judicial editing of history.'" *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004) (citation omitted). "Although 'expungement' may mean different things in different states, in general when a defendant moves to expunge records, []he asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself." *Id.* (citations omitted).

The Ninth Circuit "recognize[s] two sources of authority by which courts may expunge records of criminal conviction: statutes and [a court's] inherent authority." *Id.* "Where a statute governs, 'Congress has set the conditions by which the courts may expunge records of federal convictions in particular cases.'" *United States v. Elizalde*, No. 02-CR-2253-L, 2017 WL 1438203, at *1 (S.D. Cal. Apr. 24, 2017) (quoting *Crowell*, 374 F.3d at 792). However, "Congress has not expressly granted to the federal courts a general power to expunge criminal records." *Crowell*, 374 F.3d at 793.

/ / /

"Nevertheless, [the Ninth Circuit] has asserted that federal courts have inherent authority to expunge criminal records in appropriate and extraordinary cases." *Id.* This authority arises out of a district court's ancillary jurisdiction "'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80 (1994)). The Ninth Circuit has stressed that a court's equitable power to expunge a criminal conviction is "narrow" and "appropriately used only in extreme circumstances," *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991) (per curiam) (citations omitted), given that "'the expungement of the record of a valid arrest and conviction usurps the powers that the framers of the Constitution allocated to Congress, the Executive, and the states,'" *Crowell*, 374 F.3d at 793.

Accordingly, courts lack "the power to expunge a record of a valid arrest and conviction solely for equitable considerations"; rather, "a district court's ancillary jurisdiction [to expunge criminal records] is limited to expunging the record of an unlawful arrest or conviction, or to correcting a clerical error." *Sumner*, 226 F.3d at 1014. The Ninth Circuit has also indicated that expungement may be proper in cases of government misconduct. *Smith*, 940 F.2d at 396.

## THE PARTIES' ARGUMENTS

Defendant argues that "[h]e is not requesting that his record be expunged solely for equitable relief purposes," Mot. at 12; rather, "Mr. Groppo's Due Process rights were violated when the IRS, a branch of the United States Government, decided as a matter of fact that Mr. Groppo and Mr. Mokayef were equal partners in Macho Sports and holding him liable for well over $100,000.00 when that, simply put, is false," *id.* at 13. Defendant contends that the IRS's "disproportionate[] and unfair[] use[ of] Mr. Groppo's guilty plea in distorting his accountability and lawful responsibility far beyond what the parties, or this Court, could have intended" constitutes an "extreme circumstance" warranting expunction. *Id.* at 14. Defendant also claims that the IRS's actions constitute "clear[] misconduct." *Id.*

Given Defendant's low risk of recidivism, the "extraordinary and substantial" harm to Defendant, "far beyond what was ever considered reasonable for Mr. Groppo's limited involvement," significantly outweighs any Government interest in maintaining the record of his criminal conviction. *Id.* at 15–17.

The Government responds that the Court lacks jurisdiction to grant expungement in the circumstances presented by this case, as "ancillary jurisdiction is not appropriate here" given that "Defendant's request for expungement is entirely equitable." Opp'n at 6–7. Even if jurisdiction to grant expungement were to exist here, the Government contends that "Defendant has not demonstrated extreme circumstances warranting expungement." *Id.* at 7. Specifically, the Government contends that "[t]ax implications due to defendant's earnings, including illegal earnings, are certainly a natural consequence of his conviction," and that, "as part of his plea agreement, Defendant agreed that his criminal case did not bind any other federal authorities. That would include the IRS." *Id.* at 9. At any rate, "Defendant's regrets about the way in which he, or his attorney, handled his IRS matter is not properly before this Court, and never was." *Id.* The Government further contends that "[s]imply because [Defendant] may have a low risk of recidivism does not diminish the United States' interest in maintaining the valid conviction. If that were the case, many federal offenders would seek to have their convictions expunged. Surely that is contrary to public policy." *Id.* at 10.

In reply, Defendant argues that the IRS's "disproportionate and unforeseen additional punishment . . . supplanted this Court's authority and drastically distorted the Court's decree and findings of fact at sentencing." Reply at 3. He claims that the tax liability imposed by the IRS "without a finding of fact nor due process as required by law . . . is a violation of Groppo's Due Process rights under the Fifth Amendment" as well as "cruel and unusual punishment under the Eighth Amendment." *Id.* at 5. Defendant contends that government misconduct meriting expungement need not "be directly regarding '[the defendant's] criminal proceedings.'" *Id.* at 6.

///

# ANALYSIS

While the Court commends Defendant's law-abidingness in the years since his guilty plea, the Court finds, on the record before it, that expunction of Defendant's criminal conviction is not appropriate under the Ninth Circuit's exacting standard. The caselaw is clear that expungement of a conviction is available only if the conviction itself was unlawful or otherwise invalid. As the Ninth Circuit has stated: "Having been lawfully convicted, if [a defendant] wishes to expunge the records of h[is] conviction, []he must first obtain a judgment that h[is] conviction was unlawful." *Crowell*, 374 F.3d at 796; *see also United States v. Vasquez*, 74 F. Supp. 2d 964, 968 (S.D. Cal. 1999) ("*Smith* and other Ninth Circuit cases suggest that a defendant must establish some form of structural error that erodes the lawfulness or validity of h[is] underlying conviction before expungement may be granted.").

Accordingly, the IRS's imposition of an excise tax does not provide grounds for relief as "government misconduct." While true that *Smith* "did not state that misconduct must be *directly* regarding a defendant's criminal proceedings," Reply at 7 (emphasis in original), *Crowell* strongly suggests such is the case, and authority from other jurisdictions has so stated more explicitly. *See, e.g.*, *United States v. Robinson*, 79 F.3d 1149 (6th Cir. 1996) ("[F]ederal courts have most readily invoked the expungement power with respect to illegal convictions, convictions under statutes later deemed unconstitutional, and *convictions obtained through governmental misconduct*. Conversely, courts have uniformly denied expunction requests regarding valid convictions.") (emphasis added and citations omitted). Even were that not the case, the Plea is clear that it is not binding on the IRS and that Defendant could request that the United States Attorney's Office for the Southern District of California bring the Plea to the IRS's attention. Defendant apparently did not exercise that right, and he agreed to pay a lesser amount to reduce his possible exposure rather than contest the liability and any alleged due process violation on the IRS's part in imposing it. To the extent Defendant now second-guesses that tactical decision, expunction of his underlying criminal conviction is not an appropriate avenue of relief.

Ultimately, "[t]he harms alleged by [Defendant]," including adverse employment, financial, and tax consequences and negative publicity, "are not unusual or unwarranted. Instead, they are the natural and intended collateral consequences of having been convicted. Were we to deem them sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy." *Smith*, 940 F.2d at 396. The same is true as to Defendant's low risk of recidivism. *See, e.g.*, *Vasquez*, 74 F. Supp. 2d at 968 (finding that "additional factors" such as a lack of any other criminal record, the successful completion of probation, and rehabilitation are insufficient to merit expungement). In short, "[these] unfortunate consequence[s] . . . [are] not sufficient under Ninth Circuit precedents to authorize the court to order expungement of [Defendant's] conviction." *Id.* (footnote omitted). While the Court is sympathetic to the difficulties Defendant continues to face as a result of his conviction, it cannot grant the relief Defendant seeks.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to Expunge (ECF No. 1041) and **GRANTS** Defendant's Motion to Withdraw (ECF No. 1046).

**IT IS SO ORDERED.**

Dated: November 18, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

7

13-CR-2196 JLS